**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| RADIOLOGY & IMAGING, INC. | ) | CIVIL ACTION |
| | ) | NO._____ |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| MCKESSON CORPORATION, | ) | |
| CHANGE HEALTHCARE HOLDINGS, | ) | |
| INC., CHANGE HEALTHCARE INC., | ) | |
| UNITEDHEALTH GROUP, UNITED | ) | |
| HEALTHCARE SERVICES, | ) | |
| OPTUM INSIGHT, INC., CHANGE | ) | |
| HEALTHCARE OPERATIONS, LLC, | ) | |
| CHANGE HEALTHCARE SOLUTIONS, LLC | ) | |
| CHANGE HEALTHCARE TECHNOLOGIES | ) | |
| LLC, OPTUM, INC., OPTUM FINANCIAL, | ) | |
| INC. OPTUM BANK and OPTUM PAY. | ) | |
| | ) | |
|     Defendants. | ) | COMPLAINT AND DEMAND |
| | ) | FOR JURY TRIAL |

## JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

2. Venue lies in this district under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

3. The Plaintiff, Radiology & Imaging, Inc. ("R&I") is Massachusetts company, with its principal place of business located in Springfield, Massachusetts.

4. Per-Se Technologies, Inc. ("Per-Se") was acquired by the Defendant, McKesson Corporation ("McKesson") which is a Delaware corporation and has a principal place of business in Irving, Texas.

5. The Defendant, Change Healthcare Holdings, Inc. ("CHH") is a Delaware company and has a principal place of business in Nashville, Tennessee.

6. The Defendant, Change Healthcare, Inc.  ("Change Healthcare") is a Delaware corporation and maintains its principal place of business in Nashville, Tennessee.

7. The Defendant, UnitedHealth Group ("UHG") is a Delaware corporation and maintains its principal place of business in Minnetonka, Minnesota.

8. The Defendant, UnitedHealthCare Services, Inc. ("UHCS") is a Minnesota corporation and maintains its principal place of business in Minnetonka, Minnesota.

9. The Defendant, Optum Insight, Inc ("Optum Insight") is a Delaware corporation and maintains its principal place of business in Eden Prairie, Minnesota.

10. The Defendant, Change Healthcare Operations, LLC ("CHO") is a Delaware corporation and maintains its principal place of business in Nashville, Tennessee.

11. The Defendant, Change Healthcare Solutions, LLC ("CHS") is a Delaware corporation and maintains its principal place of business in Nashville, Tennessee.

12. The Defendant, Change Healthcare Technologies, LLC ("CHT") is a Maine corporation and maintains its principal place of business in Nashville, Tennessee.

13. The Defendant, Optum, Inc. ("Optum") is a Delaware corporation and maintains its principal place of business in Eden Prairie, Minnesota.

14. The Defendant, Optum Financial, Inc. ("Optum Financial"), is a Delaware corporation and maintains its principal place of business in Eden Prairie, Minnesota.

15. The Defendant, Optum Financial, operates as Optum Pay, a financial services platform.

16. The Defendant, Optum Bank is a Utah corporation and maintains its principal place of business in Draper, Utah.


**FACTUAL ALLEGATIONS, AND CAUSES OF ACTION**

**COUNT I - Negligence**

1. – 16. The Plaintiff, R&I, incorporates and alleges paragraphs 1 through 16 of as if fully set forth herein

17. R&I is a leading provider of radiology and imaging services in Massachusetts.

18. On or about October 6, 2010, R&I entered into an agreement with Per-Se in which Per-Se agreed to perform certain services for R&I.

19. Those services include, but are not limited to:

   a. Entering demographic information and coding information into a billing system provided by Defendants;

   b. Handling all accounts in accordance with applicable laws;

   c. Billing managed care accounts in accordance with the terms of Plaintiff's executed contracts or the rules of the state of Massachusetts;

   d. Receiving copies of the Plaintiff's patient's charts and checking for completeness;

   e. Receiving electronic transfer of demographic data from hospitals when available;

   f. Coding each patient chart based on the information provided by Plaintiff, including ICD-9 and CPT codes, procedural modifiers, and HCPCS Level II regulatory modifiers;

   g. Accepting electronic filing with Medicare, Medicaid, and Blue Shield, and other third-party payers;

   h. Providing electronic filing with all major insurance carriers;

   i. Providing electronic remittance from Medicare and all other carriers;

   j. Mailing patient statements and notices;

   k. Providing and operating a toll-free "800" phone number to answer phone inquiries concerning patient account information;

   l. Responding to inquiries received by mail from patients and/or third-party payers and approved third-party requests for medical records;

   m. Receiving all payment and reimbursement notices for Plaintiff and posting payments to the appropriate patient account;

   n. Providing statements;

    o.  Filing primary, secondary, and tertiary insurance for Plaintiff's patients and resubmitting rejections and no action accounts;

    p.  Backing-up data of the Defendants' billing system every night;

    q.  Providing monthly management reporting and scheduling monthly management meetings with Plaintiff;

    r.  Following-up on delinquent insurance accounts;

    s.  Maintaining a billing system; and

    t.  Handling unpaid billings as directed by Plaintiff.

20. As the Defendants were to perform the services identified in Paragraph 6, the Plaintiff did not have any in-house billing staff.

21. At the time the Agreement was entered into, Per-Se was owned by McKesson.

22. In or about March 2017, McKesson and the Defendant, CHH, combined to create a new healthcare information technology company, the Defendant, Change Healthcare.

23. CHH is a subsidiary of Change Healthcare.

24. Change Healthcare is a subsidiary of UHG.

25. In or about October 2022, Change was acquired by the Defendant, UHG.

26. The Defendant, UHCS is a direct subsidiary of UHG.

27. UHCS is the parent to UHG's insurance business and healthcare services business operated under the Optum brand.

28. The Defendant, Optum Insight, is a direct subsidiary of UHCS.

29. Change Healthcare is now operated as part of Optum Insight and maintained the Change Platform at all relevant times.

30. The Defendant, CHO, is a subsidiary of Change Healthcare.

31. CHO is a contracting entity for Change Healthcare.

32. The Defendant, CHS, is a subsidiary of or "managed" by CHO.

33. The Defendant, CHT is a subsidiary of, or "managed" by CHH.

34. The Defendant, Optum, is a subsidiary of UHCS.

35. The Defendant, Optum Financial, is a subsidiary of Optum.

36. The Defendant, Optum Bank, is a subsidiary of Optum Financial.

37. The Defendants, Change Healthcare, CHO, CHS, CHH, CHT and CHPS are together referred to as "Change".

38. Change, together with the Defendants UHG, UHC and Optum Insight are together referred to as the "Change Health Defendants."

39. The Change Health Defendants control the largest healthcare payment platform in the Untied States (the "Change Platform"), which provides a claims processing service that is used by healthcare providers and pharmacies, to submit claims to insurance companies and receive reimbursement for services performed.

40. The Defendants used the Change Platform to perform the services described in Paragraph 6 (the "Services").

41. To operate the Change Platform, the Change Health Defendants transacted in and stored huge volumes of confidential information including highly sensitive and confidential patient information, which included full names, phone numbers, addresses, Social Security Numbers, emails, and payment information, collectively commonly referred to as "Personally Identifying Information" or "PII."

42. The Change Health Defendants also stored R&I's patients' medical records, claims information, provider information, diagnoses, medicines, test results, images, care and treatment and billing, claims and payment information including health insurance information (such as health plans and policies, insurance companies, member and group ID numbers, and Medicaid-Medicare-government payer ID numbers), collectively commonly referred to as "Private Health Information" or "PHI" (together with PII, "Private Information").

43. In or about February 2024, Change experienced a cyberattack, which resulted in a data breach and caused significant disruption in the processing of electronic healthcare transactions, claims processing, and administrative services and payment operations (the "Data Breach").

44. Upon information and belief, the Data Breach occurred, in part, because Change did not use multi-factor authentication.

45. Upon information and belief, the Change Health Defendants did not detect the Data Breach when it first occurred.

46. Upon information and belief, the Data Breach allowed the hackers to access and download the Private Information of a large number of the Change Health Defendants' clients' information.

47. Upon information and belief, when the Change Health Defendants finally became aware of the Data Breach, they severed connection with data centers, which rendered the Change Platform inoperable.

48. As a result of the Change Heath Defendants' decision, the Plaintiff, R&I, experienced loss or delay of months' worth of income and were forced to divert resources from their ordinary operations.

49. At all relevant times, in order to obtain payment for its services, R&I relied on the Change Platform for all of R&I's medical coding, billing, collections, and revenue cycle management.

50. The Change Health Defendants are governed by HIPPA (*see* 45 C.F.R. §160.102, et seq.).

51. HIPPA required the Change Health Defendants to implement security measures to secure and safeguard Protected Information.

52. Change further represented to its clients, such as the Plaintiff, R&I, that it would protect sensitive patient information, including the Protected Information.

53. At all relevant times, the Change Health Defendants set up, operated, maintained, and controlled from a network, equipment and systems ("Systems") used to operate the Change Platform.

54. The losses and damages sustained by the Plaintiff were caused by the negligence, carelessness, recklessness, and/or negligent acts and/or omissions of the Change Health Defendants, their agents, or employees acting within the scope of their employment.

55. The Change Health Defendants owed legal and equitable duties to its customers, including the Plaintiff, R&I, which duties include a duty to adequately design, maintain, and update its Change Platform, and a duty to promptly detect, repair, and notify of any critical vulnerabilities in the Change Platform.

56. The Change Health Defendants failed to use the degree of care which a reasonably prudent company of its size would use in designing, maintaining, and utilizing security measures to protect Private Information.

57. Upon information and belief, the Change Health Defendants' negligent acts and omissions include:

    u. Failure to use and implement security systems, protocols and practices that were sufficient to protect the System against reasonably foreseeable ransomware attacks such as the Data Breach;

v.   Failure to use and implement systems, protocols, and practices with redundancies and contingencies that were sufficient to ensure the continued operation of the Change Platform;

w.   Failure to comply with the Defendants' promises of a secure Change Platform;

x.   Failure to sufficiently monitor the security of the System;

y.   Failure to update security procedures and protocols to comply with industry standards and/or best practices for maintaining and protecting Private Information;

z.   Failure to update and/or enforce security procedures and protocols requiring multi-factor authentication;

aa.  Failure to implement firewalls to block malicious IP addresses;

bb.  Failure to use the degree of care which a reasonably prudent company would use in designing, maintaining, and utilizing security measures to protect Private information

cc.  Failure to timely detect and remedy the vulnerabilities in their System and to timely restore its System; and

dd.  Failure to prevent outside actors from accessing Private Information.

ee.  Failing to notify Plaintiff their Private Information, or that of their clients, was compromised as a result of the Data Breach; and

ff.   Failing to notify Plaintiff's clients that their Private Information was compromised as a result of the Data Breach.

58. The Data Breach was a foreseeable consequence of the Defendants' failures described above.

59. As a direct and proximate consequence of the Change Health Defendants' acts and/or omissions, Plaintiff, R&I, sustained direct monetary damages including but not limited to lost revenue and other costs as well as reputational harm and the resulting lost revenues.

60. But for the Change Health Defendants' negligent and/or reckless conduct, Plaintiff, R&I, would not have experienced the past and future losses.

## COUNT II – Negligence Per Se

1– 55. The Plaintiff, R&I, incorporates and alleges paragraph 3 through 57 of Count I as if fully set forth herein.

56. At all relevant times, the Change Health Defendants had a duty to comply with applicable statutes and regulations, including Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1) and HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, the "HIPAA Privacy and Security Rules").

57. Section 5 of the FTC prohibits "unfair . . . practices in or affecting commerce." The FTC has interpreted Section 5 to include as an unfair act or practice the failure by a business to employ reasonable security measures to secure access to their paid-for systems, despite representing otherwise.

58. The HIPAA Privacy and Security Rules require that the Change Health Defendants maintain adequate data security systems to reduce the risk of data breaches and cyberattacks, adequately protect the PHI of patients, and ensure the confidentiality and integrity of electronically protected health information created, received, maintained or transmitted. *See e.g.* 45 C.F.R. § 164.306(a)(1).

59. The Change Health Defendants violated Section 5 of the FTCA and HIPPA Privacy and Security Rules by failing to use reasonable security measures to secure access to their paid for Change Platform, despite representing otherwise, including by not complying with applicable industry standards.

60. The Change Health Defendants' failure to secure the Private Information of the Plaintiff, R&I"s patients, led to the foreseeable consequence of the Data Breach.

61. The Change Health Defendants' failure to secure the data led to the Data Breach as well as to Defendants being unable to perform the Services on behalf of Plaintiff and caused Plaintiffs to suffer damages.

62. Defendants' violation of Section 5 of the FTCA and the HIPAA Privacy and Security Rules constitutes negligence per se.

63. Plaintiff, R&I, is within the class of persons that Section 5 of the FTCA and HIPAA Privacy and Security Rules were intended to protect.

64. The harm suffered by Plaintiff, R&I, is the type of harm that Section 5 of the FTCA and HIPAA Privacy and Security Rules were intended to guard against.

65. It was, or should have been, reasonably foreseeable to the Change Health Defendants that their failure to exercise reasonable care in securing the System would result in harm to Plaintiff, R&I, due to the inability to timely submit claims and not receiving timely payments for their healthcare services.

66. The injury and harm that Plaintiff, R&I, suffered and continues to suffer was the direct and proximate result of the Change Health Defendants' violation of Section 5 of the FTCA and HIPAA Privacy and Security Rules.

67. But for the Change Health Defendants' negligence per se, Plaintiff, R&I, would not have experienced these past and future damages.

## COUNT III – Breach of Contract

1- 55. The Plaintiff, R&I, incorporates and alleges paragraph 3 through 57 of Count I as if fully set forth herein.

61. Under the Agreement, at all relevant times, the Change Health Defendants were obligated to seek reimbursement for all of R&I's medical services provided to patients by billing patients and third-party payors, such as insurance companies.

62. Under the Agreement, at all relevant times, the Change Health Defendants were solely responsible for managing R&I's accounts receivable once the services have been billed.

63. Without the Change Health Defendants' performance of these essential services and obligations, R&I has no way to bill or collect money for the medical services it provided to patients and other medical providers.

64. Further, under the Agreement and the regulatory legislation, the Change Health Defendants were obligated to treat all information received from its customers, including the Plaintiff, R&I, as Private Information.

65. The Change Health Defendants agreed to use reasonable care and discretion to avoid the disclosure of such Private Information.

66. By failing to employ reasonable industry standards related to security of its System, the Change Health Defendants failed to use reasonable care or employ a reasonable industry standard of care for materials containing Private Information.

67. The Change Health Defendants' failure to employ reasonable care and discretion and/or employ a reasonable industry standard of care includes, but is not limited to:

  gg. Failure to use and implement security systems, protocols and practices that were sufficient to protect the System against reasonably foreseeable ransomware attacks such as the Data Breach;

hh. Failure to use and implement systems, protocols, and practices with redundancies and contingencies that were sufficient to ensure the continued operation of the Change Platform;

ii.  Failure to comply with the Defendants' promises of a secure Change Platform;

jj.  Failure to sufficiently monitor the security of the System;

kk. Failure to update security procedures and protocols to comply with industry standards and/or best practices for maintaining and protecting Private Information;

ll.  Failure to update and/or enforce security procedures and protocols requiring multi-factor authentication;

mm.    Failure to implement firewalls to block malicious IP addresses;

nn. Failure to use the degree of care which a reasonably prudent company would use in designing, maintaining, and utilizing security measures to protect Private information

oo. Failure to timely detect and remedy the vulnerabilities in their System and to timely restore its System; and

pp. Failure to prevent outside actors from accessing Private Information.

68. Further, the Change Health Defendants breached the Agreement by failing to provide the Services under the Agreement in a timely and efficient manner or failed to perform its services owed to R&I at all in that the Change Health Defendants:

qq. Failing to enter demographic  information and coding information into a billing system provided by Defendants;

rr.  Failing to handle all accounts in accordance with applicable laws;

ss. Failing to bill managed care accounts in accordance with the terms of Plaintiff's executed contracts or the rules of the state of Massachusetts;

tt.  Failing to receive copies of the Plaintiff's patient's charts and checking for completeness;

uu. Failing to receive electronic transfer of demographic data from hospitals when available;

vv. Failing to code each patient chart based on the information provided by Plaintiff, including ICD-9 and CPT codes, procedural modifiers, and HCPCS Level II regulatory modifiers;

ww.    Failing to accept electronic filing with Medicare, Medicaid, and Blue Shield, and other third-party payers;

xx. Failing to provide electronic filing with all major insurance carries;

yy. Failing to provide electronic remittance from Medicare and all other carriers;

zz. Failing to mail patient statements and notices;

aaa.    Failing to provide or operate a toll-free "800" phone number to answer phone inquiries concerning patient account information;

bbb.    Failing to respond to inquiries received by mail from patients and/or third-party payers and approved third-party requests for medical records;

ccc.    Failing to receive all payment and reimbursement notices for Plaintiff and posting payments to the appropriate patient account;

ddd.    Failing to provide statements;

eee.    Failing to file primary, secondary, and tertiary insurance for Plaintiff's patients and resubmitting rejections and no action accounts;

fff. Failing to back-up data of the Defendants' billing system every night;

ggg.    Failing to provide monthly management reporting and scheduling monthly management meetings with Plaintiff;

hhh.    Failing to follow-up on delinquent insurance accounts;

iii. Failing to maintain a billing system; and

jjj. Failing to handle unpaid billings as directed by Plaintiff.

69. As a direct and proximate consequence of the Change Health Defendants' breach of the Agreement, the Plaintiff, R&I, experienced direct monetary damages including but not limited to costs associated with lost revenue, claim processing expenditures, reputational harm, direct costs and other damages to be determined.

70. But for the Change Health Defendants' breach of the Agreement, the Plaintiff, R&I, would not have experienced the damages.

**COUNT IV – Breach of the Implied Covenant of Good Faith and Fair Dealing**

1-61. The Plaintiff, R&I, incorporates and alleges paragraph 1 through 61 of Count III as if fully set forth herein.

62. The Agreement contained an implied obligation of good faith and fair dealing.

63. The Change Health Defendants breached the implied covenant of good faith and fair dealing by failing to provide its services owed to R&I under the Agreement in a timely and efficient manner or failed to perform its services owed to R&I at all in that the Change Health Defendants:

   a. Failed to bill for the medical services R&I provided to its patients;

   b. Failed to process claims for medical services R&I provided to its patients;

   c. Failed to process payments received on behalf of R&I for medical services R&I provided to its patients; and

   d. Failed to handle patient complaints in a timely and professional manner thereby harming R&I's reputation and forcing R&I to handle those complaints despite not being staffed to handle the same.

64. As a direct and proximate consequence of the Change Health Defendants' breach of the implied covenant of good faith and fair dealing, the Plaintiff, R&I, experienced direct monetary damages including but not limited to costs associated with lost revenue, claim processing expenditures, reputational harm, direct costs and other damages to be determined.

65. But for the Change Health Defendants' breach of the implied covenant of good faith and fair dealing, the Plaintiff, R&I, would not have experienced damage.

## COUNT V – Negligent Misrepresentation

1-61. The Plaintiff, R&I, incorporates and alleges paragraph 1 through 61 of Count III as if fully set forth herein.

62. The Change Health Defendants had monthly meetings with the Plaintiff, R&I, prior to and following the Data Breach.

63. In the monthly meetings immediately following the Data Breach, the Change Health Defendants initially informed the Plaintiff, R&I, that they were working on a solution.

64. In or about April 2024, the Change Health Defendants, informed the Plaintiff, R&I, they were communicating with "major players" in the insurance industry and receiving "positive responses" – there by representing that despite falling behind on claims processing and payments, the Change Health Defendants had the situation "under control."

65. The Change Health Defendants continued the messaging described in Paragraph 65 in or about April and May, 2024 – including in testimony to Congress regarding the Data Breach.

66. The Change Health Defendants continued to represent to the Plaintiff, R&I, that they were close to fixing the issue and getting claims processing and payment collection back on track.

67. The Change Health Defendants further assured the Plaintiff, R&I, that any payments to the Defendants would only need to be made to the extent the Defendants were able to collect funds on behalf of Plaintiff.

68. The Change Health Defendants assured Plaintiff, R&I, that any delays would not result in making Plaintiff's billing uncollectible.

69. Despite assurances, the Change Health Defendants, upon information and belief, were focusing on their pharmacy and hospital clients and not working to remedy the issues for the Plaintiff, R&I.

70. The Change Health Defendants did not communicate to the Plaintiff, R&I, that they were not working on solutions for R&I.

71. In the late spring of 2024 or early summer of 2024, the Change Health Defendants represented they were adding approximately 500 people to their staff to address the issues in a timely manner.

72. While the Change Health Defendants resumed R&I's billing in or about August 2024, the billing never caught up and many claims expired and cannot be submitted as the claims are untimely.

73. Subsequently, in or about May or June 2025, the Change Health Defendants once against assured the Plaintiff, R&I, not to worry because every claim would be processed.

74. Upon information and belief, at the time the Change Health Defendants made the representations described above, the Change Health Defendants know, or had reason to know, that at least one of the statements was false.

75. The Change Health Defendants made these statements to induce the Plaintiff, R&I, to maintain its relationship with the Change Health Defendants despite the Change Health Defendants' ongoing default and breach of the Agreement.

76. The Plaintiff, R&I, justifiably relied upon the statements and representations of the Change Health Defendants.

77. In reliance on the Change Health Defendants' misrepresentations, R&I delayed seeking an alternative provider for its billing, collections, claims processing, and other services performed by the Change Health Defendants.

78. The Change Health Defendants failed to make efforts to implement work-arounds or provide alternate solutions.

79. Because at all relevant times, the Plaintiff, R&I, relied solely on the Change Health Defendants to provide its billing, collection, and claims processing services, R&I's receipt of claim payments was stopped for a period of time and significantly delayed.

80. Further, because at all relevant times, the Plaintiff, R&I, relied solely on the Change Health Defendants to provide its billing, collection, and claims processing services, R&I has lost the ability to collect payment as certain deadlines for the processing and submissions of claims has passed and the Change Health Defendants failed to obtain an extension, or adequate extension, of the same.

81. In addition to being unable to collect revenue, R&I had to divert resources to field patient complaints despite not being staffed to do so, thereby suffering reputational harm with R&I's patients and physician recruits.

82. As a result of the Change Health Defendants' misrepresentations, the Plaintiff, R&I, has suffered damages.


**COUNT VI – Intentional Misrepresentation/Fraud**

1.– 72. The Plaintiff, R&I, incorporates and alleges paragraph 1 through 72 of Count V as if fully set forth herein.

73. The Change Health Defendants repeatedly and intentionally misrepresented to the Plaintiff, R&I, information regarding the restoration of the Change Platform and the resumption of services to the Plaintiff, R&I, following the Data Breach.

74. The Change Health Defendants knew, or should have known, that these representations were false, or the Change Health Defendants made the representations recklessly without knowing whether they were true or false.

75. The Change Health Defendants made these statements to induce the Plaintiff, R&I, to maintain its relationship with the Change Health Defendants despite the Change Health Defendants' ongoing default and breach of the Agreement.

76. The Plaintiff, R&I, justifiably relied upon the statements and representations of the Change Health Defendants.

77. In reliance on the Change Health Defendants' misrepresentations, R&I delayed seeking an alternative provider for its billing, collections, claims processing, and other services performed by the Change Health Defendants.

78. The Change Health Defendants failed to make efforts to implement work-arounds or provide alternate solutions.

79. Because at all relevant times, the Plaintiff, R&I, relied solely on the Change Health Defendants to provide its billing, collection, and claims processing services, R&I's receipt of claim payments was stopped for a period of time and significantly delayed.

80. Further, because at all relevant times, the Plaintiff, R&I, relied solely on the Change Health Defendants to provide its billing, collection, and claims processing services, R&I has lost the ability to collect payment as certain deadlines for the processing and submissions of claims has passed and the Change Health Defendants failed to obtain an extension, or adequate extension, of the same.

81. In addition to being unable to collect revenue, R&I had to divert resources to field patient complaints despite not being staffed to do so, thereby suffering reputational harm with R&I's patients and physician recruits.

82. As a result of the Change Health Defendants' misrepresentations, the Plaintiff, R&I, has suffered damages.

## COUNT VII – Violation of M.G.L. c. 93A

1.-80. Paragraphs 1 through 80 of Count VI are incorporated herein as Paragraphs 1 through 80 of Count VII as if fully set forth herein.

81. At all times material to this Complaint, Plaintiff and Defendants were engaged in trade and commerce within the meaning of M.G.L. c. 93A §11.

82. The conduct of Defendants as alleged herein, including but not limited to their misrepresentations, fraud and breaches of the implied covenant of good faith and fair dealing constitute unfair and deceptive trade practices declared unlawful under M.G.L. c. 93A §2 or by the rules and regulations promulgated by the Attorney General of the Commonwealth of Massachusetts pursuant to M.G.L. c. 93A.

83. Defendants' unfair and deceptive acts or practices proximately caused Plaintiff to suffer monetary damages.

84. The unfair and deceptive conduct of Defendants was knowing and willful.


## COUNT VIII – Detrimental Reliance

1. - 73. The Plaintiff, R&I, incorporates and alleges paragraph 1 through 73 of Count V as if fully set forth herein.

74. The Change Health Defendants made a clear commitment and/or promise to the Plaintiff, R&I, that it would fix the issue(s) and get claims processing and payment collection back on track.

75. The Change Health Defendants made a clear commitment and/or promise to the Plaintiff, R&I, that the delays would not result in making Plaintiff's billing uncollectible.

76. The Change Health Defendants knew, or reasonably expected, their commitments and/or promises to result in the Plaintiff, R&I, deciding to maintain its relationship with the Change Health Defendants despite the Change Health Defendants' ongoing default and breach of the Agreement.

77. As a result of the Change Health Defendants' commitments and/or promises, the Plaintiff, R&I, did in fact decide to maintain their relationship with the Change Health Defendants despite the Change Health Defendants' ongoing default and breach of the Agreement.

78. The Plaintiff's, R&I, reliance on the Change Health Defendants' commitments and/or promises were reasonable under the circumstances.

79. As a result of the Plaintiff's, R&I, reliance on the Change Health Defendants' commitments and/or promises, the Plaintiff, R&I, suffered harm and damages.


**WHEREFORE,** the Plaintiff, Radiology & Imaging, Inc., requests that this Court:

1. Enter judgment in favor of Plaintiff as against each Defendant on each Count of the Complaint in an amount or amounts to be determined, including multiple damages under G.L.c. 93A §11, interest and reasonable costs and attorneys' fees incurred in connection with this matter;

2. Award Plaintiff treble damages in an amount to be determined, including interest, reasonable costs, and attorneys' fees in connection with Count VII; and

3. Grant such further relief as the Court finds just and proper.


PLAINTIFF,
RADIOLOGY & IMAGING, INC.

By: _____
MICHAEL P. LEWIS, ESQ.
BBO #706519
HALLORAN & SAGE LLP
1380 Main Street- 5th Floor

16